UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

RUTH SPIGNER,
Plaintiff,
v.
NIKE-IHM, and MANPOWER US INC.,
Defendants.

Case No. ___________

COMPLAINT FOR VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE MISSOURI HUMAN RIGHTS ACT

JURY TRIAL DEMANDED

I. INTRODUCTION

1. Plaintiff Ruth Spigner brings this action against Nike-IHM (“Nike”) and Manpower US Inc. (“Manpower”) arising from alleged sex-based harassment, sexual harassment, hostile work environment, and retaliation during Plaintiff’s temporary work assignment at Nike’s facility in St. Charles County, Missouri.

2. Manpower recruited, hired, paid, and assigned Plaintiff to work at Nike as a temporary machine operator beginning in February 2025.

3. Nike operated the workplace and supervised Plaintiff’s day-to-day work.

4. During Plaintiff’s assignment, Nike employee Shanice Nash made unwelcome comments about Plaintiff’s appearance and interest in men. In early June 2025, Nash allegedly grabbed Plaintiff’s breast while Plaintiff was working.

5. During the early morning hours of June 13, 2025, Plaintiff reported the alleged touching and continuing harassment to Nike supervisors Shane Darby and Bernard.

6. Shortly after Plaintiff made the report, Nash was called into an office. Plaintiff later learned that Nash told other employees that Plaintiff’s assignment was ending that day.

7. Plaintiff completed her shift at approximately 5:30 a.m. At approximately 12:44 p.m. on June 13, 2025, Manpower notified Plaintiff that Nike had decided to end her assignment effective immediately.

8. Plaintiff disputes Defendants’ later explanations for ending the assignment. Plaintiff alleges that the timing and sequence of events support an inference that her complaint contributed to the decision.

9. Defendants may contend that the assignment ended because of alleged workplace misconduct by Plaintiff. Plaintiff disputes those allegations and alleges that the stated reasons were not the true reasons for the adverse action or were applied in a manner that concealed retaliation.

10. Plaintiff personally knows what was said and done to her, what she reported, when she reported it, what communications she received, and when her assignment ended. Plaintiff seeks discovery concerning the decision-making process, communications between Nike and Manpower, contemporaneous reports, surveillance, and the reasons relied upon by Defendants.

## II. PARTIES

11. Plaintiff Ruth Spigner is a resident of Missouri.

12. Defendant Manpower US Inc. is a corporation that employed Plaintiff as a temporary associate, paid her wages, and assigned her to work at Nike.

13. Manpower is an employer within the meaning of Title VII and the Missouri Human Rights Act (“MHRA”), or is otherwise responsible for employment, assignment, communication, and decision-making conduct within its control.

14. Defendant Nike-IHM operated the facility where Plaintiff worked in St. Charles County, Missouri.

15. Nike supervised Plaintiff’s work and controlled the workplace, including work assignments, workplace rules, reporting procedures, and the conduct of Nike employees.

16. Nike is an employer within the meaning of Title VII and the MHRA, or is otherwise responsible for conduct within its control.

17. Nike and Manpower each exercised control over aspects of Plaintiff’s employment and assignment. Their respective roles in supervision, discipline, reporting, investigation, and ending Plaintiff’s assignment require discovery.

18. Nike is responsible for the conduct of its employees and supervisors. Manpower is responsible for its own employment, assignment, communication, and decision-making conduct.

19. Plaintiff names both Defendants because Manpower employed, paid, and assigned Plaintiff, while Nike controlled the workplace, supervised Plaintiff’s daily work, employed the alleged harasser and relevant supervisors, received Plaintiff’s complaint, and allegedly participated in or caused the ending of Plaintiff’s Nike assignment.

20. Plaintiff alleges that Nike and Manpower may be joint employers, integrated employers, or otherwise separately liable for conduct within their respective control. Plaintiff pleads these theories in the alternative to the extent permitted by law.

## III. JURISDICTION AND VENUE

21. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964.

22. Plaintiff’s federal claims arise under 42 U.S.C. §§ 2000e-2 and 2000e-3.

23. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff’s related MHRA claims because those claims arise from the same facts, workplace, assignment, complaint, and adverse action as Plaintiff’s federal claims.

24. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices occurred at Nike's facility in St. Charles County, Missouri.
25. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.
26. Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") concerning the alleged sex discrimination, sexual harassment, hostile work environment, and retaliation.
27. The EEOC charge was received by the EEOC on December 7, 2025, and was assigned EEOC Charge No. 560-2025-03139.
28. The EEOC charge identified the respondents as ManpowerGroup and Nike IHM Inc.
29. The EEOC charge addressed the alleged harassment, Plaintiff's report of that conduct, and the adverse action that followed.
30. Plaintiff alleges that the claims against Nike-IHM are exhausted because the claims are reasonably related to and grow out of the allegations presented to the EEOC concerning Nike IHM Inc., the Nike workplace, the alleged harassment, Plaintiff's report, and the ending of Plaintiff's assignment.
31. Plaintiff alleges that the claims against Manpower US Inc. are exhausted because the claims are reasonably related to and grow out of the allegations presented to the EEOC concerning ManpowerGroup, Plaintiff's staffing/employment relationship, the Nike assignment, the alleged harassment, and the ending of Plaintiff's assignment.
32. If the EEOC charge identified only one Defendant as the named respondent, Plaintiff alleges that the claims against the other Defendant arise from the same workplace, assignment, adverse action, reporting sequence, and employment relationship and are reasonably related to, or grew out of, the matters presented to the EEOC.
33. Plaintiff received a Notice of Right to Sue from the EEOC issued on June 15, 2026, concerning EEOC Charge No. 560-2025-03139.
34. Plaintiff received the Notice of Right to Sue through the EEOC Public Portal. Plaintiff will rely on the EEOC Public Portal record or other contemporaneous record to establish the exact date of receipt.
35. Plaintiff filed this action within ninety days after receiving the Notice of Right to Sue.
36. Plaintiff will attach the EEOC charge, any amended charge, the Notice of Right to Sue, and any other relevant EEOC documents as exhibits, subject to applicable court rules and confidentiality requirements.
37. Plaintiff has satisfied all applicable Title VII administrative prerequisites, including timely filing of an EEOC charge and receipt of a Notice of Right to Sue, or Plaintiff pleads that any alleged defect is excused or does not bar the claims under applicable law.
38. Plaintiff asserts no Title VII claim outside the scope of the EEOC charge or claims reasonably related to, or growing out of, the matters presented to the EEOC.
39. Plaintiff filed, or will file, a charge with the Missouri Commission on Human Rights ("MCHR") concerning the alleged sex discrimination, sexual harassment, hostile work environment, and retaliation.

40. The MCHR charge was submitted as a dual-filed charge received by the EEOC on December 7, 2025, and was assigned MCHR Charge No. 560-2026-01876.
41. The MCHR charge identified the respondents as ManpowerGroup and Nike IHM Inc.
42. Plaintiff alleges that the MHRA claims against Nike-IHM are within the scope of the MCHR charge and reasonably related to the matters presented concerning Nike IHM Inc., the Nike workplace, the alleged harassment, Plaintiff's report, and the ending of Plaintiff's assignment.
43. Plaintiff alleges that the MHRA claims against Manpower US Inc. are within the scope of the MCHR charge and reasonably related to the matters presented concerning ManpowerGroup, Plaintiff's staffing/employment relationship, the Nike assignment, the alleged harassment, and the ending of Plaintiff's assignment.
44. The materials presently available to Plaintiff establish the MCHR charge number and dual-filing information, but do not establish the date of an MCHR right-to-sue letter. Plaintiff therefore pleads the MHRA claims only to the extent the applicable administrative prerequisites and limitations requirements have been satisfied.
45. Plaintiff filed this action within the applicable MHRA limitations period and within any applicable period following issuance or receipt of an MCHR right-to-sue letter.
46. If Plaintiff has not yet received an MCHR right-to-sue letter, Plaintiff should not assert the MHRA claims as fully exhausted unless Missouri law permits the claims to proceed based on the applicable administrative timeline. Plaintiff reserves the right to amend this Complaint after receiving any required MCHR notice.
47. Plaintiff asserts MHRA claims only to the extent all applicable administrative prerequisites, charge requirements, right-to-sue requirements, and limitations periods have been satisfied.

## IV. CHRONOLOGICAL FACTUAL ALLEGATIONS

### A. Plaintiff's Assignment at Nike

48. On or about February 21, 2025, Manpower assigned Plaintiff to work at Nike as a machine operator.
49. Manpower administered Plaintiff's temporary employment relationship, including payroll and assignment administration.
50. Nike operated the facility and supervised Plaintiff's day-to-day work.
51. Plaintiff performed her work under the supervision of Nike personnel.
52. Before the events described below, Plaintiff had not received formal discipline from Defendants.

### B. Sex-Based Comments and Harassment

53. During Plaintiff's assignment, Nike employee Shanice Nash made comments about Plaintiff's appearance and suggested that Plaintiff was at work looking for a man or attempting to attract men.
54. Plaintiff understood those comments to be sex-based and unwelcome.

55. In early June 2025, Nash repeatedly approached Plaintiff's workstation, stared at Plaintiff, and made insinuating comments.
56. On approximately June 4 or June 5, 2025, Nash approached Plaintiff's workstation after Plaintiff asked what Nash was looking at.
57. Nash responded, "I will show you," walked to Plaintiff's workstation, and grabbed Plaintiff's breast.
58. Plaintiff did not consent to the touching.
59. Plaintiff reacted in shock, held her chest, and identified the conduct as sexual harassment.
60. The touching was physically offensive, humiliating, and unwelcome.
61. Plaintiff did not immediately make a formal management complaint because she feared losing her temporary assignment and was concerned that Nash's status as a full-time Nike employee could affect how a complaint would be handled.
62. After the incident, Nash and another employee made additional remarks about Plaintiff and her clothing. Nash also continued approaching, staring at, or glaring at Plaintiff at her workstation.
63. Plaintiff alleges that the comments, touching, and continuing conduct interfered with her ability to work and affected the conditions of her employment.
64. Plaintiff does not presently know the full extent of Defendants' knowledge of the conduct before June 13, 2025. Information concerning prior complaints, reports by other employees, and Defendants' records requires discovery.

C. Plaintiff's June 13 Report

65. During the early morning hours of June 13, 2025, Plaintiff reported the alleged breast-grabbing incident and continuing harassment to Nike supervisors Shane Darby and Bernard.
66. Plaintiff described the incident and communicated that the touching was unwelcome and sexually harassing.
67. Plaintiff's report constituted protected activity because she opposed conduct she reasonably believed constituted sex discrimination or sexual harassment.
68. Darby reacted with surprise and stated that Nike would handle the matter.
69. Shortly after Plaintiff made her report, Nash was called into an office.
70. Plaintiff later learned that Nash told other employees that Plaintiff's assignment was ending that day.
71. Plaintiff does not personally know who authorized or communicated that statement to Nash. The source and timing of that information require discovery.

D. Ending of Plaintiff's Nike Assignment

72. Plaintiff completed her shift at approximately 5:30 a.m. on June 13, 2025.
73. At approximately 12:44 p.m. that day, Manpower notified Plaintiff that Nike had decided to end her assignment effective immediately.

74. Ending the Nike assignment caused Plaintiff to lose the work, wages, and employment opportunity associated with that assignment.
75. Plaintiff immediately contacted Manpower and disputed the stated basis for ending the assignment.
76. Plaintiff was told that she had allegedly made someone feel uncomfortable.
77. Plaintiff denied the allegation and requested that Nike and Manpower review available surveillance footage and other evidence.
78. Plaintiff personally knows when she made her complaint, when she received notice that the assignment was ending, and what explanation she was given.
79. Plaintiff alleges that Nike knew of her complaint before the assignment-ending decision was communicated.
80. The precise time when the decision was made, the identity of the decision-maker, and the information considered in making the decision require discovery.
81. Manpower communicated the assignment-ending decision and may have received information about, participated in, or implemented the decision. The extent of Manpower's involvement requires discovery.
82. The adverse action occurred within hours of Plaintiff's complaint. Plaintiff alleges that the timing and sequence of events support an inference of retaliation.

E. Defendants' Asserted Reasons

83. Manpower later asserted to the EEOC that Nike had previously raised concerns about Plaintiff's workplace conduct and that Nike decided to end the assignment based on additional alleged conduct reported on June 13.
84. Plaintiff disputes the characterization, accuracy, significance, and timing of those allegations.
85. Plaintiff does not presently know whether the alleged misconduct was documented before her complaint, whether the decision had already been made before the complaint, who participated in the decision, or whether the stated reasons changed over time.
86. Plaintiff alleges that any alleged misconduct was exaggerated, selectively enforced, or used as a justification for ending her assignment.
87. Plaintiff alleges that the asserted reasons do not eliminate the inference of retaliation because the adverse action occurred within hours of her complaint and because Plaintiff has not received all records concerning the decision.
88. Plaintiff alleges that Nike did not take effective corrective action after receiving her complaint and that Plaintiff's assignment ended shortly thereafter.
89. Plaintiff alleges that Manpower communicated or implemented the ending of the assignment and did not provide Plaintiff with an effective remedy after she disputed the stated reason.

F. Police Report and Evidence Preservation

90. On June 14, 2025, Plaintiff reported the alleged sexual assault to the St. Charles County Police Department.

91. Law enforcement subsequently sought relevant surveillance and other records from Nike.
92. Nike's security personnel advised law enforcement that relevant video was retained for approximately thirty days and that the requested surveillance was ultimately unavailable.
93. Plaintiff personally knows that she made the police report and that she was informed that the requested surveillance was unavailable.
94. Plaintiff does not personally know what surveillance existed, whether it captured the incident or reporting sequence, when it was reviewed, or how it was preserved or deleted. Those matters require discovery.
95. Relevant evidence may include communications between Nike and Manpower, contemporaneous reports, investigation records, surveillance-retention records, disciplinary records, and records identifying the persons involved in ending Plaintiff's assignment.

COUNT I

TITLE VII — SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

96. Plaintiff incorporates paragraphs 1 through 95.
97. Plaintiff is a woman and was employed by Manpower and assigned to work at Nike during the relevant period.
98. Plaintiff was subjected to unwelcome conduct because of sex, including comments about her appearance and interest in men, repeated staring and insinuating conduct, and the unwanted grabbing of her breast.
99. The alleged conduct was unwelcome and offensive.
100. Plaintiff alleges that the conduct was sufficiently severe, and alternatively sufficiently pervasive, to alter the conditions of her employment and create a hostile or abusive work environment.
101. Plaintiff alleges that the conduct interfered with her work and caused humiliation, emotional distress, anxiety, and other harm.
102. Nike knew or should have known of the harassment no later than June 13, 2025, when Plaintiff reported it to Darby and Bernard.
103. Plaintiff alleges that Nike failed to take prompt and effective corrective action after receiving actual notice of the harassment.
104. Instead, within hours of Plaintiff's complaint, Plaintiff's Nike assignment was ended.
105. Nike is liable for the conduct of its employees and for the actions of its supervisors and decision-makers after Plaintiff reported the harassment.
106. Manpower is liable to the extent it knew or should have known of the harassment, had authority to protect Plaintiff or address the assignment, received notice of Plaintiff's complaint, or participated in ending Plaintiff's assignment without taking reasonable corrective action.

COUNT II

TITLE VII — RETALIATION

107. Plaintiff incorporates paragraphs 1 through 106.

108. Plaintiff engaged in protected activity when she reported the alleged sexual harassment and sexual assault to Nike supervisors.

109. Nike knew of Plaintiff's protected activity because she reported the conduct directly to Darby and Bernard.

110. Manpower communicated the adverse action and may have received information concerning Plaintiff's complaint or participated in implementing the decision. The extent of Manpower's knowledge and involvement requires discovery.

111. Plaintiff suffered a materially adverse employment action when her Nike assignment was ended and she lost the work, wages, and employment opportunity associated with that assignment.

112. The adverse action occurred within hours of Plaintiff's complaint.

113. The timing and sequence of events support an inference of retaliation. Additional evidence concerning the decision-makers, communications, and reasons for the action requires discovery.

114. Nike retaliated against Plaintiff by causing, approving, recommending, or participating in ending her Nike assignment after she complained of sexual harassment.

115. Manpower retaliated against Plaintiff to the extent it communicated, implemented, approved, or participated in ending her Nike assignment after receiving information concerning the complaint and adverse action.

116. Defendants' asserted reasons were pretextual, exaggerated, inconsistently applied, selectively enforced, or otherwise not the true reason for the adverse action.

117. Plaintiff alleges that, absent the retaliatory motive, the adverse action would not have occurred when and how it did.

COUNT III

MISSOURI HUMAN RIGHTS ACT — SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

118. Plaintiff incorporates paragraphs 1 through 117.

119. Plaintiff is a member of a protected class because she is a woman.

120. Plaintiff was subjected to unwelcome sex-based conduct, including sexually charged comments and unwanted physical touching.

121. Plaintiff alleges that the conduct was sufficiently severe, and alternatively sufficiently pervasive, to alter the conditions of her employment and create a hostile or abusive work environment.

122. Nike knew or should have known of the alleged harassment no later than June 13, 2025, when Plaintiff reported it to Nike supervisors.

123. Plaintiff alleges that Nike failed to take reasonable corrective action and that her assignment ended shortly after her complaint.

124. Manpower is liable to the extent it knew or should have known of the harassment, received notice of the complaint, had authority to address Plaintiff's assignment or employment, or participated in the adverse action without taking reasonable corrective action.

COUNT IV

MISSOURI HUMAN RIGHTS ACT — RETALIATION

125. Plaintiff incorporates paragraphs 1 through 124.

126. Plaintiff engaged in protected activity by reporting alleged sex-based harassment and sexual assault.

127. Nike knew of Plaintiff's protected activity because she reported it to Nike supervisors.

128. Manpower communicated the adverse action and may have received information concerning Plaintiff's complaint or participated in implementing the decision. The extent of Manpower's knowledge and involvement requires discovery.

129. Plaintiff suffered an adverse employment action when her Nike assignment was ended.

130. The adverse action occurred within hours of Plaintiff's complaint.

131. The timing and sequence of events support an inference that the action was motivated, at least in part, by Plaintiff's protected activity.

132. Nike caused, approved, recommended, or participated in ending Plaintiff's assignment in retaliation for her complaint.

133. Manpower communicated, implemented, approved, or participated in ending Plaintiff's assignment to the extent it acted with knowledge of Plaintiff's protected activity.

134. Defendants' stated reasons were pretextual, exaggerated, inconsistently applied, selectively enforced, or otherwise not the true reason for the adverse action.

135. Plaintiff seeks relief under the MHRA to the extent all applicable administrative prerequisites and statutory requirements have been satisfied.

V. DAMAGES

136. As a direct and proximate result of Defendants' conduct, Plaintiff suffered economic and non-economic damages.

137. Economic damages include lost wages, lost employment opportunities, lost benefits, and other employment-related losses proven at trial.

138. Non-economic damages include emotional distress, humiliation, embarrassment, anxiety, loss of sleep, pain and suffering, and loss of enjoyment of life, to the extent recoverable under applicable law.

139. Plaintiff also seeks any other damages authorized by Title VII and the MHRA.

VI. PRESERVATION AND DISCOVERY

140. Relevant evidence may include:

a. communications between Nike and Manpower concerning Plaintiff;
b. communications concerning Plaintiff's complaint of sexual harassment;
c. communications concerning the decision to end Plaintiff's Nike assignment;
d. contemporaneous reports concerning Plaintiff and the alleged June 13 incidents;
e. records concerning investigations of Plaintiff's complaint;
f. surveillance-retention records and any surviving surveillance footage;
g. records concerning discipline or corrective action involving Nash or other relevant employees;
h. records concerning similarly situated employees who did not engage in protected activity; and
i. documents identifying persons involved in ending Plaintiff's assignment.

141. Plaintiff requests that Defendants preserve all electronically stored information, communications, personnel records, investigation materials, surveillance-related records, and other evidence relating to the matters alleged in this Complaint.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor on all claims proven at trial;
B. Award Plaintiff back pay and other economic damages allowed by law;
C. Award compensatory damages as authorized by applicable law;
D. Award punitive damages against any Defendant for which the statutory requirements are established;
E. Award prejudgment and post-judgment interest as permitted by law;
F. Award costs and, where authorized by law;
G. Order such equitable relief as the Court determines appropriate; and
H. Grant such other relief as the Court determines is just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims for which a jury trial is available.

Respectfully submitted,

Ruth Spigner
Pro Se
421 Savannah Circle
646-442-1530
ruthreon@gmail.com

Date: September 8, 2026